## IN THE UNITED STATES DISTRICT COURT
## FOR WESTERN DISTRICT OF PENNSYLVANIA,
## PITTSBURGH DIVISION

| | | |
|---|---|---|
| MILLER'S FURNITURE OF MERCER COMPANY, d/b/a HANEY'S COMFORT LIVING FURNITURE, a Pennsylvania Corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. |
| v. | ) ) | |
| BANNER LIFE INSURANCE COMPANY, WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK, DJM ADVISORY GROUP, LLC, DONALD QUIRKE, and JOHN DOES 1·12, | ) ) ) ) ) ) | |
| Defendants. | ) | |

### CLASS ACTION COMPLAINT

Plaintiff, Miller's Furniture of Mercer Company d/b/a Haney's Comfort Living Furniture ("Haney's" and "Plaintiff"), brings this action on behalf of itself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendants Banner Life Insurance Company ("Banner Life"), DJM Advisory Group, LLC ("DJM"), Donald Quirke ("Quirke"), William Penn Life Insurance Company of New York ("William Penn"), and John Does 1-12 (collectively "Defendants"):

### PRELIMINARY STATEMENT

1.     Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227, and the regulations the Federal

1

Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.      Defendants sent Plaintiff at least one advertisement by facsimile and in violation of the TCPA. **Exhibit A**.

3.      Plaintiff brings this action on behalf of itself and a class of all similarly-situated persons, and against Defendants, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages, injunctive relief, and all other relief the Court deems appropriate under the circumstances.

4.      Unsolicited faxes cause damage to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. Moreover, a junk fax interrupts the recipient's privacy. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.

5.      The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement...." 47 U.S.C. § 227 (b)(1)(C). The TCPA defines an "unsolicited advertisement" as "**any** material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission...." *Id.*, § 227 (a)(5) (emphasis added).

6.      Defendants' fax advertises their "affordable" 10-Year Guaranteed term life insurance products. **Exhibit A**.

## PARTIES, JURISDICTION, AND VENUE

7.      Miller's Furniture of Mercer Company d/b/a Haney's Comfort Living Furniture is a Pennsylvania corporation with its principal place of business at 30 North Beaver Street, New Castle, Pennsylvania.

8.      On information and belief, Defendant DJM is a New York limited liability company with its principal place of business located at 41 Scout Hill Road, Mahopac, New York. DJM has no registered agent listed with the New York Department of State Division of Corporations.

9.      Donald Quirke is an individual residing at 41 Scout Hill Road, Mahopac, New York. He is the president, founder, and owner of Defendant DJM.

10.     On information and belief, Banner Life is an insurance company incorporated in the state of Maryland, with its corporate headquarters located at 3275 Bennett Creek Avenue, Frederick, Maryland.

11.     On information and belief, William Penn Life Insurance Company of New York is a wholly owned subsidiary of Banner Life with its corporate headquarters located at 3275 Bennett Creek Avenue, Frederick, Maryland.

12.     John Doe Defendants 1-12 are persons yet unknown to Plaintiff that actively participated in the transmission of fax advertisements to the class, or benefitted from those transmissions.

13.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §1331, and supplemental jurisdiction under 28 U.S.C. §1367.

14.     Personal jurisdiction exists over Defendants in Pennsylvania because Defendants have transacted business and committed tortious acts within the State by causing the transmission of unlawful facsimile communications into the State.

3

15.     Venue is proper in the Western District of Pennsylvania, Pittsburgh Division because Defendants committed statutory torts within this District and a significant portion of the events took place here.

### FACTS

16.     DJM is an independent insurance agency.

17.     Banner Life underwrites and issues term life insurance policies.

18.     William Penn underwrites and issues term life insurance policies.

19.     Defendants sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiff), Defendants are directly liable for violating the TCPA.

20.     Plaintiff has received at least one of Defendants' advertisements by facsimile. A true and correct copy of the fax received in or about April 3, 2015 is attached as **Exhibit A**. Plaintiff intends to discover the number of other Defendants' advertisements sent to Plaintiff by fax.

21.     **Exhibit A** is a one-page document Defendants sent by fax advertising Defendants' term life insurance products. The fax advertises the commercial availability or quality of property, goods, or services. **Exhibit A** describes the available insurance products as "affordable" and "guaranteed." The fax provides information about the availability and price of various term life insurance products purportedly offered by DJM, and methods for contacting DJM to receive a personalized term life insurance quote.

22.     **Exhibit A** advertises term life insurance policies issued by Defendant Banner Life and Defendant William Penn.

4

23.     **Exhibit A** includes DJM's name, address, website address, and contact information.

24.     **Exhibit A** includes Defendant Banner Life and Defendant William Penn's names and the states where Defendant Banner Life and Defendant William Penn are located and do business.

25.     On information and belief, Defendant Banner Life receives some or all of the revenues from the sale of the products, goods, and services issued by Banner Life and advertised on **Exhibit A** and Banner Life profits and benefits from the sale of the products, goods, and services advertised on **Exhibit A** issued by Banner Life.

26.     On information and belief, Defendant William Penn receives some or all of the revenues from the sale of the products, goods, and services issued by William Penn and advertised on **Exhibit A** and William Penn profits and benefits from the sale of the products, goods, and services advertised on **Exhibit A** issued by William Penn.

27.     **Exhibit A** does not include a compliant opt-out notice required by 47 C.F.R. § 64.1200 (a)(4).

28.     Plaintiff did not expressly invite or give permission to anyone to send **Exhibit A** or any other advertisement from DJM, Banner Life, or William Penn to Plaintiff's fax machine.

29.     On information and belief, Defendants sent advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA throughout the class period.

30.     Plaintiff and the other class members owe no obligation to protect their fax machines from Defendants. Their fax machines are ready to send and receive their urgent communications, or private communications about their clients' needs, not to receive

5

Defendants' unlawful advertisements.

31.     At all relevant times, Defendant Quirke personally and directly managed the operations of DJM.

32.     At all relevant times, Defendant Quirke sent and/or personally authorized the sending of the subject faxes.

33.     Defendant Quirke created or authorized the wording in the subject faxes.

34.     At all relevant times, Defendant Quirke intentionally authorized and/or participated in the actions of DJM.

35.     At all relevant times, Defendant Quirke failed to implement policies and procedures that complied with the TCPA.

36.     At all relevant times, Defendant Quirke's actions were intentional.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of a class.

38.     The "TCPA Class" is defined as follows:

> All persons who were sent one or more telephone facsimile messages from DJM Advisory Group offering "Affordable Term Life Insurance" underwritten and/or issued by Banner Life Insurance Company or William Penn Life Insurance Company of New York that did not contain an opt out notice that complied with federal law, and who did not provide prior express permission or invitation to receive the facsimile(s).

39.     There are 2 classes Plaintiff seeks to represent for the conversion claim.

40.     The first class Plaintiff seeks to represent for the conversion claim, the "PA Conversion Class", is initially defined as follows:

> All persons sent one or more telephone facsimile messages from DJM Advisory Group offering "Affordable Term Life Insurance" underwritten and issued by Banner Life Insurance Company or William Penn Life Insurance Company of New York, which they received in the

Commonwealth of Pennsylvania, and who did not provide prior express permission or invitation to receive the facsimile.

41.     The second class Plaintiff seeks to represent for the conversion claim, the "US Conversion Class", is initially defined as follows:

> All persons sent one or more telephone facsimile messages from DJM Advisory Group offering "Affordable Term Life Insurance" underwritten and issued by Banner Life Insurance Company or William Penn Life Insurance Company of New York, which they received in any state except the Commonwealth of Pennsylvania, and who did not provide prior express permission or invitation to receive the facsimile.

42.     There are 2 classes Plaintiff seeks to represent for the trespass to chattel claim

43.     The first class Plaintiff seeks to represent for the trespass to chattel claim, the "PA Trespass Class", is initially defined as follows:

> All persons sent one or more telephone facsimile messages from DJM Advisory Group offering "Affordable Term Life Insurance" underwritten and issued by Banner Life Insurance Company or William Penn Life Insurance Company of New York, which they received in the Commonwealth of Pennsylvania, and who did not provide prior express permission or invitation to receive the facsimile.

44.     The second class Plaintiff seeks to represent for the trespass to chattel claim, the "US Trespass Class", is initially defined as follows:

> All persons sent one or more telephone facsimile messages from DJM Advisory Group offering "Affordable Term Life Insurance" underwritten and issued by Banner Life Insurance Company or William Penn Life Insurance Company of New York, which they received in any state except the Commonwealth of Pennsylvania, and who did not provide prior express permission or invitation to receive the facsimile.

45.     There are 2 classes Plaintiff seeks to represent for the private nuisance claim

46.     The first class Plaintiff seeks to represent for the private nuisance claim, the "PA Nuisance Class", is initially defined as follows:

All persons sent one or more telephone facsimile messages from DJM Advisory Group offering "Affordable Term Life Insurance" underwritten and issued by Banner Life Insurance Company or William Penn Life Insurance Company of New York, which they received in the Commonwealth of Pennsylvania, and who did not provide prior express permission or invitation to receive the facsimile.

47.     The second class Plaintiff seeks to represent for the private nuisance claim, the "US Nuisance Class", is initially defined as follows:

All persons sent one or more telephone facsimile messages from DJM Advisory Group offering "Affordable Term Life Insurance" underwritten and issued by Banner Life Insurance Company or William Penn Life Insurance Company of New York, which they received in any state except the Commonwealth of Pennsylvania, and who did not provide prior express permission or invitation to receive the facsimile.

48.     Plaintiff expressly reserves the right to modify the proposed class definitions or propose subclasses.

49.     Excluded from the classes are Defendants, any entity in which Defendants have a controlling interest, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

50.     On information and belief, Defendants' fax advertising campaigns involved other, substantially-similar advertisements also sent without a compliant opt-out notice required by the TCPA. Plaintiff intends to locate those advertisements in discovery.

51.     This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making

class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

52.     **Numerosity/impracticality of joinder.** On information and belief, the classes consist of more than 39 persons and, thus, are so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but will be obtained from Defendants' records or the records of third parties.

53.     **Commonality and predominance.** There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the classes. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

   a.     Whether Defendants sent advertisements by facsimile promoting the commercial availability or quality of property, goods, or services;

   b.     Whether **Exhibit A** and other yet-to-be-discovered facsimiles sent by or on behalf of Defendants advertised the commercial availability or quality of property, goods or services;

   c.     The manner and method Defendants used to compile or obtain the list(s) of fax numbers to which they sent **Exhibit A** and other fax advertisements;

   d.     Whether Defendants' fax advertisements contained opt-out notices compliant with the TCPA;

   e.     Whether Plaintiff and the other class members should be awarded statutory damages;

9

f. Whether Defendants committed conversion, trespass to chattel, and/or private nuisance, and the damages thereto.

g. If the Court finds that Defendants willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount; and,

h. Whether the Court should enjoin Defendants from faxing advertisements in the future.

54. **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain a compliant opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the other putative class members will prevail as well.

55. **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the classes.

56. **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create

incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements of if Defendants choose to advertise by fax again in the future.

57. **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227
## TCPA CLASS

58. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

59. Plaintiff brings Count I on behalf of itself and a class of similarly situated persons against Defendants.

60. The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227 (b) (1).

61. The TCPA defines "unsolicited advertisement" as "any material advertising

the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission."  47 U.S.C. § 227 (a) (4).

62.     **Exhibit A** advertises Defendants' commercially available term life insurance products.

63.     Defendants sent their faxes to Plaintiff and others offering to provide affordable, guaranteed term life insurance. **Exhibit A**.

64.     The TCPA provides a private right of action as follows:

> 3.     <u>Private right of action</u>.  A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B)     An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> >
> > (C)     Both such actions.

47 U.S.C. § 227 (b) (3).

65.     The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful.  47 U.S.C. § 227 (b) (3).

66.     The TCPA expressly mandates the form and content of an opt-out notice. 47 U.S.C. § 227 (b) (2) (D) & (E), in relevant part, states:

> In implementing the requirements of this subsection, the Commission ...
>
> (D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if...

12

(i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;

(ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;

(iii) the notice sets forth the requirements for a request under subparagraph (E);

(iv) the notice includes —

> (I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and

> (II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;

(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

(vi) the notice complies with the requirements of subsection (d) of this section;

(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—

> (i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

> (ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and

(iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine;

67.     The FCC's regulations at 47 C.F.R. §64.1200 (a) (4) (iii) & (v) expressly require the following:

(iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if -

(A) The notice is clear and conspicuous and on the first page of the advertisement;

(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;

(D) The notice includes -

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

...

(v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if -

(A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

14

(B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

(C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

68.     Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending an advertisement by facsimile (such as **Exhibit A**) to Plaintiff and the other class members without their prior express invitation or permission.

69.     The TCPA requires that every advertisement sent by facsimile must include a compliant opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 C.F.R. § 64.1200 (a) (4).

70.     Defendants' fax does not set forth the requirements for Plaintiff or any member of the putative class to properly request an opt-out as explained by 47 C.F.R. § 64.1200 (a) (4) (v). Specifically, the fax does not inform Plaintiff and other putative class members that the request will be honored only unless or until the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send advertisements to such person at such telephone facsimile machine.

71.     Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4).

72.     **Exhibit A** does not provide all of the information the TCPA requires for a compliant opt-out notice. **Exhibit A** fails to state on the advertisement's first page that the

recipient may make a request to the sender not to send any future advertisement by facsimile and that the sender's failure to comply within 30 days is unlawful.

73.     Defendants' failure to include a compliant opt-out notice on their fax advertisements makes irrelevant any express consent or established business relationship ("EBR") that otherwise might have justified Defendants' fax advertising campaigns. 47 C.F.R. § 64.1200 (a) (4).

74.     The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other class members even if their actions were negligent. 47 U.S.C. § 227 (b) (3).

75.     Even if Defendants did not intend to injure Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste their valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

76.     If Defendants' actions were knowing or purposeful, then the Court has the discretion to increase the statutory damages up to 3 times the amount. 47 U.S.C. § 227 (b) (3).

77.     DJM is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, designed the faxes, caused the faxes to be designed, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

78.     Banner Life is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, designed the faxes, caused the faxes to be designed, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, approved the faxes to be sent, its products are advertised within the fax, or

under general principles of vicarious liability, including actual authority, apparent authority and ratification.

79.     William Penn is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, designed the faxes, caused the faxes to be designed, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, approved the faxes to be sent, its products are advertised within the fax, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

80.     Defendants knew or should have known that Plaintiff and the other class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods, products, or services, that Plaintiff and the other class members did not have an established business relationship with Defendants, that **Exhibit A** is an advertisement, and that **Exhibit A** did not display a compliant opt-out notice as required by the TCPA.

81.     Defendants' actions damaged Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, the subject faxes used the fax machines of Plaintiff and the other class members. The subject faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' illegal faxes. That time otherwise would have been spent on Plaintiff's business activities. Defendants' faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

17

## COUNT II
## CONVERSION
## PA CONVERSION AND US CONVERSION CLASSES

82.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

83.     Plaintiff brings Count II on behalf of itself and a class of similarly situated persons against Defendants.

84.     Immediately prior to the sending of the junk faxes, Plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

85.     By sending the junk faxes, Defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

86.     Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

87.     Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the Junk Faxes, and can recover such damages.

88.     Defendants should be enjoined from committing similar violations.

## COUNT III
## TRESPASS TO CHATTEL
## PA TRESPASS AND US TRESPASS CLASSES

89.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

90.     Plaintiff brings Count III on behalf of itself and a class of similarly situated

persons against Defendants.

91.     Plaintiff and the class members were entitled to immediate possession of the equipment they used to receive faxes.

92.     Defendants sending Plaintiff and the class members junk faxes interfered with their use of the receiving equipment and deprived them of the use of the equipment for a substantial time, and thus constitutes a trespass to such equipment.

93.     Defendants acted either intentionally or negligently in engaging in such conduct.

94.     Plaintiff and each class member suffered damages as a result of receipt of the junk faxes and can recover such damages.

95.     Defendants should be enjoined from continuing similar trespass.

**COUNT IV**
**PRIVATE NUISANCE**
**PA NUISANCE AND US NUISANCE CLASSES**

96.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

97.     Plaintiff brings Count IV on behalf of itself and a class of similarly situated persons against Defendants.

98.     Plaintiff and class members had property rights and privileges in the equipment and paper and ink/toner they used to receive faxes.

99.     Defendants' sending Plaintiff and class members Junk Faxes was an invasion of their property causing significant harm and constitutes a private nuisance.

100.    Defendants' invasion of this property was intentional and unreasonable.

101.    The interference with Plaintiff's and the class members' communications equipment and supplies was unreasonable.

19

102.    In the alternative to the above averment, Defendants' invasion of this property was unintentional but negligent.

103.    Congress determined, in enacting the TCPA, that the prohibited conduct constituted private nuisances and intrusive invasions of privacy.

104.    Plaintiff and class members are entitled to both damages and an order that the nuisance be abated.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court declare that the fax did not include a compliant opt-out notice;

C.    That the Court award $500.00 in statutory damages for each violation of the TCPA;

D.    That, if it finds Defendants willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

E.    That the Court award actual damages pursuant to the conversion, trespass to chattel, and private nuisance claims.

F.    That the Court enter an injunction prohibiting Defendants from violating the TCPA; and,

G.    That the Court award costs and such further relief as the Court may deem

just and proper.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.

By: _____

Richard Shenkan
Shenkan Injury Lawyer, LLC.
P.O. Box 7255
New Castle, PA 16107
Telephone: 412-716-5800
Facsimile: 888-769-1774

ATTORNEYS FOR MILLER'S
FURNITURE OF MERCER COMPANY,
d/b/a HANEY'S COMFORT LIVING
FURNITURE, a Pennsylvania Corporation,
individually and as the representative of a
class of similarly-situated persons